**GUCOVSCHI LAW FIRM, PLLC.**
Adrian Gucovschi (State Bar No. 360988)
Nathaniel Haim Sari (State Bar No. 362634)
165 Broadway, Fl. 23
New York, NY 10006
Telephone: (212) 884-4230
Facsimile: (212) 884-4230
E-Mail: adrian@gucovschilaw.com
nathaniel@gucovschilaw.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JONATHAN GOMEZ ALVAREZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CONOPCO, INC.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jonathan Gomez Alvarez ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against Defendant Conopco, Inc. ("Defendant"). Plaintiff alleges the following based on personal knowledge as to his own acts and experiences, and on the investigation of his counsel and information and belief as to all other matters.

## NATURE OF THE ACTION

1. Defendant markets, labels, advertises, and sells its Sir Kensington's Avocado Oil Mayonnaise (the "Product"), with front-label packaging that prominently represents that the Product is made with "Avocado Oil" along with online marketing that represents that the Product is comprised of "100% avocado oil" (the "Avocado Oil Representation"). The Product's ingredient statement reinforces that representation by identifying avocado oil as the first and only oil.

2. Reasonable consumers understand the Avocado Oil Representation to mean that the Product is made with authentic avocado oil and not with cheaper substitute oils. Despite this, food scientists at the University of California, Davis ("UC Davis") analyzed two separate production lots of the Product and found their fatty-acid and sterol compositions materially inconsistent with authentic avocado oil. The Product's compositional profiles indicate that the avocado oil used in the Product was substituted or diluted with cheaper refined vegetable or seed oils.[1]

3. As a result of its deceptive conduct, Defendant is, and continues to be, unjustly enriched at the expense of its consumers.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005 ("CAFA"), because the proposed Classes include more than 100 members, the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and at least one Class Member is a citizen of a state different from Defendant.

5. This Court has personal jurisdiction over Defendant because it conducts substantial business within California, including the sale, marketing, and advertising of the Product.

---

[1] Natalie Lopez-Alvarez, Xueqi Li, Benjamin Vizgordiski & Selina C. Wang, Authenticity of avocado and olive oils used as ingredients in commercially processed foods, 6 Applied Food Research 102389 (2026), https://doi.org/10.1016/j.afres.2026.102389.

Furthermore, a substantial portion of the events giving rise to Plaintiff's claims occurred in this State, including Plaintiff's purchase of the Product.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant conducts substantial business in this District and a substantial part of the events giving rise to Plaintiff's claims took place within this District, including Plaintiff's purchase of the Product while residing in Compton, California.

**PARTIES**

7. Plaintiff Jonathan Gomez Alvarez resides in Compton, California. On December 17, 2025, Plaintiff purchased two units of Sir Kensington's Avocado Oil Mayonnaise, 12 fl oz, from Amazon.com for a total of $17.98. Before making his purchase, Plaintiff saw that the Product was advertised and marketed on Amazon as "Avocado Oil Mayonnaise" made with "100% avocado oil." Plaintiff relied on Defendant's representations when he decided to purchase the Product over comparable products that did not make those claims. Plaintiff saw Defendant's representations prior to and at the time of his purchase and understood them as a representation and warranty that the Product was made exclusively with avocado oil. Plaintiff relied on these representations and warranties in deciding to purchase the Product. Accordingly, those representations and warranties were part of the basis of his bargain, in that he would not have purchased the Product on the same terms had he known that those representations were not true. Furthermore, in making his purchase, Plaintiff paid a substantial price premium due to Defendant's false and misleading representations concerning the Product. Plaintiff, however, did not receive the benefit of his bargain because those representations were not, in fact, true.

8. Plaintiff remains interested in purchasing mayonnaise made exclusively with authentic avocado oil. Because the Product's true oil composition cannot be determined without scientific testing, Plaintiff cannot rely on the representations as presently made. However, Plaintiff would purchase the Product again if Defendant verified that it contained exclusively authentic avocado oil and ensured that the representations are accurate and truthful.

9. Defendant Conopco, Inc. is a New York corporation with its headquarters and principal place of business in Hoboken, New Jersey.

10. Defendant manufactures, markets, and distributes the Product throughout the United States and in California.

## GENERAL ALLEGATIONS

### A. Consumer Demand for Product Made with Authentic Avocado Oil

11. The Avocado Oil Representation is material because it is important to consumers' decisions to purchase the Product.

12. Avocado oil is widely regarded as one of the healthiest food oils. Studies have indicated that avocado consumption may help lower blood pressure and LDL cholesterol and reduce osteoarthritis-related symptoms.[2] Avocado oil is high in monounsaturated fat, which is considered more heart healthy than saturated fat, and is slightly more stable than the polyunsaturated fats typically found in vegetable oils.[3] It is also in high demand because it has the highest smoke point of all plant-based food oils and is desirable for high-heat applications such as frying.[4]

13. These qualities, among others, motivate consumers to pay a premium for products made with avocado oil instead of products made with other food oils, such as canola, corn, peanut, safflower, soybean, and sunflower oil.

14. Defendant does not disclose in the Product's Amazon listing, on the Product's packaging, or elsewhere, that the oil in the Product is not authentic avocado oil or is blended, diluted, or substituted with cheaper vegetable or seed oils. Consumers therefore reasonably believe that the Product is made with authentic avocado oil.

15. Whether the oil in a food product is the oil identified on its label—rather than a cheaper substituted oil—is material regardless of whether consumers believe avocado oil is superior to other oils. Consumers may be allergic to certain oils or have other reasons for avoiding them, and they reasonably expect to know what type of oil they are consuming.

---

[2] Healthline, Evidence-Based Health Benefits of Avocado Oil, https://www.healthline.com/nutrition/9-avocado-oil-benefits.

[3] MasterClass, What Is Avocado Oil? A Guide to Cooking With Avocado Oil, https://www.masterclass.com/articles/what-is-avocado-oil-a-guide-to-cooking-with-avocado-oil.

[4] *Id.*

16. The UC Davis researchers likewise recognized the significance of front-of-package oil claims, observing that "consumers may reasonably interpret front-of-package oil claims as signals of meaningful product differentiation."5 Because the products studied "declared only a single edible oil in the ingredient statement and did not disclose blended oil formulations," the researchers explained, "consumers would reasonably expect the named oil, particularly when emphasized through front-of-package claims such as 'made with 100% avocado oil,' to be the primary lipid source of the product."[6]

17. Consumers purchase the Product in part because the Avocado Oil Representation conveys the unequivocal message that the Product is made with authentic avocado oil. Plaintiff and the Class Members would have paid less for the Product, or would not have purchased it, absent that representation. They therefore suffered financial injury by paying a price premium attributable to the Avocado Oil Representation.

**B. <u>The Product and Defendant's Representations</u>**

18. Defendant advertises the Product in big bold letters on its front label as "AVOCADO OIL MAYONNAISE" which it markets as being "made with the highest quality, non-GMO ingredients like 100% avocado oil" [7] (the "Avocado Oil Representation").


**About this item**

- Sir Kensington's Avocado Oil Mayonnaise is made with the highest quality, non-GMO ingredients like 100% avocado oil.
- Avocado Oil Mayo is a real mayonnaise made with a squeeze of lime and a pinch of black pepper.
- This Avocado Oil Mayo is Paleo and Keto Diet Certified condiment, containing no sugar. And, it is shelf-stable.
- All Sir Kensington's condiments and dressings are proudly gluten free.
- We don't use artificial ingredients, colors or preservatives in our Avocado Oil Mayonnaise
- COLD WEATHER WARNING: During the winter, condiments can freeze in transit. While safe to eat, it will not look or taste appealing. You may wish to delay ordering until temps are warmer.

[5] Lopez-Alvarez, *et al., supra* note 1 at 2, 4.
[6] *Id.*

[7] Amazon.com, Sir Kensington's Avocado Oil Mayonnaise, 12 oz, https://www.amazon.com/dp/B08PN5WLCC (last accessed August 31, 2026).

19. The Avocado Oil Representation also appears in Defendant's associated branded marketing. Defendant states: "This mayo hass it all! Paleo and Keto certified, 100% avocado oil, and bright and savory notes for an unexpected AVO-lanche of flavor." The following image depicts the Product purchased by Plaintiff:




20. The Product declares exactly one oil: "Avocado Oil." It does not declare another oil, an oil blend, or an "and/or" oil statement. A reasonable consumer who reads the Avocado Oil Representation and then finds only "Avocado Oil" as the oil in the ingredient statement reasonably understands that the oil is authentic avocado oil. Federal regulations require labels and ingredient statements to identify ingredients by their common or usual names. See 21 C.F.R. § 101.4(a)(1).

**C. <u>The UC Davis 2026 Study</u>**

***i. Sampling and Classification Methodology***

21. The study, Authenticity of avocado and olive oils used as ingredients in commercially processed foods (the "Study"), reported the first systematic examination of whether avocado oil and olive oil used as ingredients in commercially processed foods are authentic.[8]

[8] Lopez-Alvarez, et al., supra note 1.

22. The UC Davis researchers selected commercially processed foods in three categories—chips, mayonnaise, and salad dressings—based on "consumer popularity and market availability."[9] They included only products that "declared a single oil (e.g. avocado oil or olive oil) in the ingredient statement and did not list additional edible oils."[10] The Product satisfied that criterion and was included in the Study.

23. The researchers analyzed 74 samples representing 37 distinct commercial products, with two separate production lots collected for each product. The Product was among those tested. The product information accompanying the Study identifies Sir Kensington's Avocado Oil Mayonnaise as Sample Nos. 63 and 64.[11]

24. Samples were purchased in 2025 and 2026 from online sources and retail stores in California and stored unopened in the laboratory until analysis.[12] The researchers collected and analyzed two separate lots of each product.[13] The Product was therefore tested through two independent production lot samples.[14]

25. The researchers measured both fatty acid and sterol profiles.[15] They classified samples by comparing those profiles with the Codex Alimentarius Standard for Named Vegetable Oils (CXS 210-1999) and the Standard for Olive Oils and Olive Pomace Oils (CXS 33-1981), which are "intended to encompass expected natural variability" in oil composition.[16]

26. The Study used deliberately conservative classification criteria.[17] To account for analytical uncertainty, biological variability, and possible processing effects, the researchers did not classify a sample as inconsistent when only one fatty acid or sterol marker deviated by no more than

---

[9] *Id.* at 2.
[10] *Id.*
[11] UC Davis, Studied Products AFRES (identifying Sir Kensington's Avocado Oil Mayonnaise as Sample Nos. 63 and 64), https://ucdavis.app.box.com/s/6ogs4l0ogplunooktwryr5b1m6k2xr9u/file/2353660743779; Lopez-Alvarez, et al., supra note 1, at 2.
[12] Lopez-Alvarez, et al., supra note 1 at 2.
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] See *Id.* at 3.

10% beyond established compositional limits; those samples were considered consistent.[18] A sample was treated as merely borderline, not inconsistent, when no more than two markers marginally exceeded that allowance without concordant deviations elsewhere. A sample fully consistent in either fatty acids or sterols and borderline in the other was considered consistent with authentic oil.[19] Only samples with "multiple deviations or patterns inconsistent with authentic reference profiles" were classified as inconsistent.[20]

***ii. Every Tested Lot of the Sir Kensington's Product Was Classified as Inconsistent***

27. Every tested lot of the Product was classified as compositionally inconsistent with authentic avocado oil. Both samples fell outside the Codex ranges for palmitic acid, palmitoleic acid, and stearic acid. Although authentic avocado oil is expected to contain 4.0% to 17.1% palmitoleic acid, both Sir Kensington's samples contained only 1.2%.[21]

28. The Product also failed the sterol analysis. Both samples fell outside the Codex range for each of campesterol, stigmasterol, and Δ7-avenasterol. Authentic avocado oil is expected to contain 0.3% to 2.0% stigmasterol; the Sir Kensington's samples contained 6.6% and 6.9%. These results reflected the broader sample set: 71% of the avocado-oil-labeled mayonnaise samples and 100% of the avocado-oil-labeled salad-dressing samples were classified as inconsistent. Overall, "[e]ighty-nine percent of avocado oil-labeled products exhibited compositional patterns inconsistent with authentic avocado oil."[22]

29. Principal component analysis of the fatty acid and sterol profiles "demonstrated clear separation between samples classified as consistent and inconsistent with their labeled oil claims."[23] Many avocado-oil-labeled samples clustered near a vegetable-oil comparator containing canola,

---

[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *See* UC Davis, Studied Products AFRES, https://ucdavis.app.box.com/s/6ogs4l0ogplunooktwryr5b1m6k2xr9u/file/2353660743779 (identifying Samples 63 and 64 as Sir Kensington's Avocado Oil Mayonnaise); Lopez-Alvarez, et al., supra note 1, Supplemental Materials, Table S3, https://ars.els-cdn.com/content/image/1-s2.0-S2772502226007274-mmc1.xlsx.
[22] See UC Davis, Studied Products AFRES, supra note 21; Lopez-Alvarez, et al., supra note 1, Supplemental Materials, Table S4; Lopez-Alvarez, et al., supra note 1, at 1, 3.
[23] Lopez-Alvarez, et al., supra note 1, at 4.

corn, soybean, and/or sunflower oil, indicating profiles more consistent with polyunsaturated vegetable oils than with authentic avocado oil.[24] Both Sir Kensington's samples also had cis-vaccenic acid values of only 1.6%, far below the 5.5% to 7.5% range reported for authentic avocado oil and at or near levels reported for high-oleic sunflower oil.[25]

***iii. Processing Does Not Explain the Compositional Deviations***

30. The researchers anticipated and experimentally tested whether the observed compositional deviations might result from cooking, blending, or emulsification rather than the identity of the oil used in the products.

31. They prepared model products in the laboratory using retail avocado oils employed as reference oils, whose pre-processing fatty acid and sterol profiles fell within every applicable Codex range.

32. The results were unambiguous. "For avocado oil subjected to frying, absolute changes in major fatty acids were less than 0.6%." Cis-vaccenic acid—the key discriminatory marker for avocado oil authenticity—"decreased by only 0.1% following frying in both potato and tortilla chips." The researchers concluded that "[t]hese model product experiments indicate that typical frying and emulsification conditions do not substantially alter oil authenticity markers."[26]

33. The magnitude and pattern of the deviations found in the Product cannot be explained by frying, emulsification, blending, processing, or natural variation. The results instead indicate that the Product is not made exclusively with authentic avocado oil.

34. In short, the oil recovered from the Product is not compositionally consistent with authentic avocado oil, or at a minimum, not with oil consisting fully of authentic avocado oil. It bears the compositional signature of the inexpensive refined vegetable or seed oils that Defendant tells consumers the Product replaces and excludes.

---

[24] *Id*. at 6.
[25] *See* UC Davis, Studied Products AFRES, supra note 11; Lopez-Alvarez, et al., supra note 1, Supplemental Materials, Table S3; Hilary S. Green & Selina C. Wang, Cis-vaccenic acid: New maker [sic] to detect seed oil adulteration in avocado oil, 1 Food Chemistry Advances 100107 (2022), https://doi.org/10.1016/j.focha.2022.100107.
[26] *See* Lopez-Alvarez, et al., supra note 1, at 7.

35. The test results therefore indicate that the oil used in the tested Product was economically adulterated. Defendant's representations misled consumers into believing they were purchasing a Product made only with high-quality, authentic avocado oil. The Avocado Oil Representation is therefore false and misleading.

**D. Defendant Knew that the Avocado Oil Representation Was False**

36. Defendant knows, or reasonably should know, that its marketing of the Product misleads consumers.

37. Avocado-oil adulteration has been publicly and repeatedly documented since at least 2020, when UC Davis researchers published the first report on the quality and purity of avocado oil sold in the United States and found that most samples tested were adulterated or of substandard quality.[27] A follow-up study published in 2023 found that approximately 70% of private-label avocado oils tested were "rancid or mixed with other oils."[28]

38. Defendant is a sophisticated food manufacturer and controls the sourcing, formulation, labeling, and marketing of the Product. Defendant markets the Product as containing "100% avocado oil." Given its business, supply-chain control, and the documented adulteration risk, Defendant knew or should have known that the Product did not contain exclusively authentic avocado oil.[29]

**E. Defendant's Labeling Violates Federal and California Food Labeling Law**

39. The federal Food, Drug, and Cosmetic Act ("FDCA") deems a food misbranded if "its labeling is false or misleading in any particular." 21 U.S.C. § 343(a)(1). The FDCA further deems a food misbranded if "it is offered for sale under the name of another food." 21 U.S.C. § 343(b).

---

[27] Hilary S. Green & Selina C. Wang, First report on quality and purity evaluations of avocado oil sold in the US, https://www.sciencedirect.com/science/article/pii/S0956713520302449.

[28] Tiffany Dobbyn, Nearly 70% of Private Label Avocado Oil Rancid or Mixed With Other Oils, https://www.ucdavis.edu/food/news/70%25-private-label-avocado-oil-rancid-or-mixed-other-oils; Hilary S. Green & Selina C. Wang, Purity and quality of private labelled avocado oil, https://www.sciencedirect.com/science/article/pii/S0956713523002372.

[29] Sir Kensington's, Avocado Oil Mayonnaise, archived Dec. 15, 2025, at https://web.archive.org/web/20251215142519/https://www.sirkensingtons.com/us/en/p/avocado-oil-mayonnaise.html/00850551005951.

40. The FDCA also deems a food adulterated if "any valuable constituent has been in whole or in part omitted or abstracted therefrom"; if "any substance has been substituted wholly or in part therefor"; if "damage or inferiority has been concealed in any manner"; or if "any substance has been added thereto or mixed or packed therewith so as to increase its bulk or weight, or reduce its quality or strength, or make it appear better or of greater value than it is." 21 U.S.C. § 342(b)(1)–(4).

41. FDA regulations require that the ingredients of a food be declared by their common or usual names. 21 C.F.R. § 101.4(a)(1).

42. California has adopted the federal food labeling regulations as its own. Cal. Health & Safety Code § 110100(a) ("All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food labeling regulations of this state."). The ingredient-declaration requirement of 21 C.F.R. § 101.4(a)(1) is therefore a requirement of California law, independent of its federal source.

43. The Product's ingredient statement declares exactly one oil—"Avocado Oil"—and Defendant represents in the Product's marketing that the Product is made with "100% avocado oil." Every tested lot of the Product was nevertheless classified as compositionally inconsistent with authentic avocado oil, and bore the compositional signature of cheaper refined vegetable or seed oils. The Product is therefore both misbranded and economically adulterated: a cheaper oil was substituted in whole or in part for the avocado oil Defendant declared, and that substitution was concealed from consumers.

44. Plaintiff's state-law claims are independently grounded in California's Sherman Food, Drug, and Cosmetic Law and the Unfair Competition Law, which parallel but do not depend on the FDCA. The FDCA provisions alleged above are offered as evidence of Defendant's conduct and as predicate unlawful acts supporting the UCL's unlawful prong—not as the sole basis for any state-law claim. Plaintiff's claims would exist under the Sherman Law and the UCL regardless of the FDCA, because California's food misbranding, adulteration, and false-advertising statutes impose obligations coextensive with, but independent from, those the FDCA imposes.

45. Defendant's marketing, advertising, and sale of the Product violate the misbranding provisions of the Sherman Law applicable to food (Cal. Health & Safety Code § 110660, et seq.), including but not limited to:

(a) Section 110660 (a food is misbranded if its labeling is false or misleading in any particular), in that Defendant represents that the Product is made with 100% avocado oil when the Product's oil is not compositionally consistent with authentic avocado oil;

(b) Section 110685 (a food is misbranded if it is offered for sale under the name of another food), in that the Product is offered for sale as avocado oil mayonnaise when the oil it contains bears the compositional signature of cheaper refined vegetable or seed oils;

(c) Section 110680 (a food is misbranded if its labeling or packaging does not conform to the requirements of Chapter 4), in that the Product's labeling fails to conform to Chapter 4's prohibition on false and misleading advertising at Section 110390;

(d) Section 110725 (a food fabricated from two or more ingredients is misbranded unless it bears a label clearly stating the common or usual name of each ingredient), in that the Product's ingredient statement declares "Avocado Oil" as its only oil while the oil actually used is not authentic avocado oil;

(e) Section 110705 (a food is misbranded if information required to appear on the label or labeling is not prominently placed with such conspicuousness as to render it likely to be read by the ordinary consumer), in that Defendant prominently represents that the Product is made with 100% avocado oil while nowhere disclosing that the oil is blended, diluted, or substituted; and

(f) Sections 110760, 110765, and 110770 (it is unlawful to manufacture, sell, deliver, hold, or offer for sale misbranded food, to misbrand food, or to receive or deliver misbranded food in commerce), in that Defendant has manufactured, marketed, sold, and delivered the misbranded Product described herein.

46. Defendant's marketing, advertising, and sale of the Product also violate the adulteration provisions of the Sherman Law applicable to food (Cal. Health & Safety Code § 110585, et seq.), including but not limited to:

(a) Section 110585(a) (a food is adulterated if any valuable constituent has been in whole or in part omitted or abstracted therefrom), in that authentic avocado oil—the constituent for which consumers pay a premium—has been omitted in whole or in part from the Product;

(b) Section 110585(b) (a food is adulterated if any substance has been substituted wholly or in part therefor), in that cheaper refined vegetable or seed oils have been substituted wholly or in part for the avocado oil Defendant declares;

(c) Section 110585(c) (a food is adulterated if damage or inferiority has been concealed in any manner), in that the inferiority of the substituted oil is concealed by the Avocado Oil Representation and by an ingredient statement declaring avocado oil as the first and only oil;

(d) Section 110585(d) (a food is adulterated if any substance has been added thereto or mixed or packed therewith so as to reduce its quality or strength or make it appear better or of greater value than it is), in that the substituted oil reduces the Product's quality while the Avocado Oil Representation makes the Product appear of greater value than it is; and

(e) Section 110620 (it is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is adulterated), in that Defendant has manufactured, sold, delivered, held, and offered for sale the adulterated Product described herein.

47. Defendant's marketing, advertising, and sale of the Product also violate the false-advertising provisions of the Sherman Law (Cal. Health & Safety Code § 110390, et seq.), including but not limited to:

(a) Section 110390 (it is unlawful for any person to disseminate any false advertisement of any food), in that Defendant disseminated false and misleading advertising through the Product's Amazon listing and its associated branded marketing, representing that the Product is made with 100% avocado oil;

(b) Section 110395 (it is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is falsely advertised), in that Defendant manufactured, sold, delivered, held, and offered the Product for sale through online and retail channels after disseminating the false advertising described herein; and

(c) Sections 110398 and 110400 (it is unlawful for any person to advertise any food that is adulterated or misbranded, and unlawful to receive in commerce any falsely advertised food or to deliver or proffer for delivery any such food), in that Defendant has advertised and continues to advertise the misbranded and adulterated Product and has delivered and continues to proffer for delivery the falsely advertised Product to consumers.

**F. Rule 9(b) Allegations**

48. **WHO:** Defendant Conopco, Inc..

49. **WHAT:** Defendant's conduct was, and continues to be, false, deceptive, and misleading because Defendant affirmatively represented that the Product is "Avocado Oil Mayonnaise" made with "100% avocado oil," and declared avocado oil as the first and only oil in the Product's ingredient statement, while omitting and concealing that the oil in the Product is not compositionally consistent with authentic avocado oil and was substituted or diluted with cheaper refined vegetable or seed oils. These representations and omissions were material to Plaintiff and the Classes.

50. **WHEN:** Defendant made these material misrepresentations and omissions to Plaintiff and the members of the Classes throughout the Class Period, including immediately prior to and at the time of their purchases of the Product. Plaintiff purchased the Product on December 17, 2025.

51. **WHERE:** On the Product's front label, in the Product's listing on Amazon.com, and in Defendant's associated branded marketing, including Defendant's website at sirkensingtons.com. The Representation appeared in the product title, in front-label packaging imagery, in "About this item" content, and in other product-description content.

52. **HOW:** By prominently making the Avocado Oil Representation on the Product's front label and throughout its online marketing, and by reinforcing that representation through an ingredient statement identifying avocado oil as the first and only oil.

53. **INJURY:** Plaintiff and the members of the Classes purchased, and paid a premium for, the Product that they would not have purchased—or for which they would have paid substantially less—absent Defendant's misrepresentations and omissions.

### G. Plaintiff Lacks an Adequate Remedy at Law

54. Plaintiff lacks an adequate remedy at law for the future harm described above. Damages cannot remedy Plaintiff's inability to rely on the Avocado Oil Representation when deciding whether to purchase the Product in the future, and only injunctive relief requiring Defendant to cease the misleading Representation or to reformulate the Product can address that prospective harm.

55. Equitable relief is also necessary because legal remedies may prove inadequate to provide complete relief, including restitution measured by the difference between the price Plaintiff and the Classes paid and the value of the Product as received, and disgorgement of the revenues Defendant unfairly obtained, which are equitable remedies not necessarily coextensive with damages.

56. Equitable relief is also appropriate because the statutes of limitations for the causes of action pled herein vary. The UCL's and FAL's statutes of limitations are four years—one year longer than the CLRA's statute of limitations. Thus, class members who purchased the Product more than three years before the filing of this Complaint would be barred from recovery if equitable relief were not permitted under the UCL and FAL.

57. The scope of actionable misconduct under the FAL and UCL is also broader than under the other causes of action asserted herein. The FAL and UCL prohibit Defendant's fraudulent marketing scheme. Plaintiff's warranty and common-law claims, on the other hand, are more limited, focusing on the specific duties and obligations arising from Defendant's misrepresentations and omissions at the point of purchase. The UCL also creates a cause of action for violations of laws that do not themselves provide for a private cause of action—including the FTC's prohibition on unfair and deceptive acts in the advertising of consumer products.

## CLASS ALLEGATIONS

58. Plaintiff brings this action on behalf of himself and all others similarly situated pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3). The proposed classes are defined as (collectively, the "Classes"):

**Nationwide Class:** All persons in the United States who, during the maximum period of time permitted by law, purchased Defendant's Product for their personal use.

**California Subclass:** All persons in California who, during the maximum period of time permitted by the law, purchased Defendant's Product for their personal use.

**Multi-State Consumer Protection Subclass:** All persons who, during the maximum period of time permitted by law, purchased Defendant's Product in the states enumerated in Count IV below.

**Multi-State Warranty Subclass:** All persons who, during the maximum period of time permitted by law, purchased Defendant's Product in the states enumerated in Count V below.

59. The Classes do not include (1) Defendant, its officers, and/or directors; (2) the Judge and/or Magistrate to whom this case is assigned; (3) the Judge or Magistrate's staff and family; and (4) Plaintiff's counsel and Defendant's counsel.

60. Plaintiff reserves the right to amend the above class definitions and add additional classes and subclasses as appropriate based on investigation, discovery, and the specific theories of liability.

61. **Numerosity:** While the exact number of members of the Classes is unknown to Plaintiff at this time, and can only be determined by appropriate discovery, upon information and belief, members of the Classes number in the thousands.

62. **Existence and Predominance of Common Questions of Law and Fact:** Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individuals of the Classes. These common questions include, but are not limited to:

(a) Whether the Avocado Oil Representation is false and misleading;

(b) Whether Defendant's Representation was material;

(c) Whether the oil used to make the Product is authentic avocado oil;

(d) Whether the oil used to make the Product was substituted or diluted with cheaper vegetable or seed oils;

(e) Whether the Product is misbranded or adulterated under federal and California food labeling law;

(f) Whether Defendant was unjustly enriched as a result of its unlawful conduct;

(g) Whether Plaintiff and the Classes have suffered damages and the amount thereof.

63. **Typicality:** The claims of the named Plaintiff are typical of the claims of other members of the Classes in that the named Plaintiff was exposed to Defendant's false and misleading Avocado Oil Representation, purchased the Product in reliance on that Representation, and suffered a loss as a result.

64. **Adequacy:** Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff has no interests adverse to the interests of the members of the Classes and is committed to the vigorous prosecution of this action, and, to that end, has retained skilled and experienced counsel.

65. **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of the claims asserted in this action under Federal Rule of Civil Procedure 23(b)(3) because the expense and burden of individual litigation makes it economically unfeasible for members of the Classes to seek redress other than through the procedure of a class action.

## CAUSES OF ACTION

### COUNT I
### Violation of California's Consumers Legal Remedies Act
### Cal. Civ. Code § 1750, et seq.
### (On Behalf of the California Subclass)

66. Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

67. Plaintiff brings this claim on behalf of himself and the California Subclass against Defendant.

68. Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have."

69. Civil Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

70. Civil Code § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."

71. Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Product to unwary consumers by making the Avocado Oil Representation even though the oil in the Product is not compositionally consistent with authentic avocado oil.

72. Defendant's wrongful business practices constituted, and still constitute, a continuing course of conduct in violation of the CLRA.

73. On August 28, 2026, Plaintiff sent Defendant a pre-suit notice letter pursuant to Cal. Civ. Code § 1782(a). The letter was sent by certified mail, return receipt requested, provided notice of Defendant's violations and demanded that Defendant correct the unlawful, unfair, false, and deceptive practices alleged herein.

74. At this time, Plaintiff seeks injunctive relief under the CLRA pursuant to Cal. Civ. Code § 1780(a)(2), together with attorneys' fees and costs under Cal. Civ. Code § 1780(e). Should Defendant fail to provide appropriate corrective relief within 30 days of its receipt of the notice described above, Plaintiff will amend this Complaint pursuant to Cal. Civ. Code § 1782(d) to seek actual, statutory, and punitive damages and restitution under Cal. Civ. Code § 1780(a).

## COUNT II
**Violation of California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code § 17200, et seq.**
**(On Behalf of the California Subclass)**

75. Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this Complaint.

76. Plaintiff brings this claim individually and on behalf of the members of the California Subclass against Defendant.

77. Defendant violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200–17210, *et seq.,* by engaging in unfair, fraudulent, and unlawful business practices.

78. The UCL prohibits unfair competition, defined to include "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. A business act or practice is "unlawful" if it violates any established state or

federal law. A practice is unfair if it (1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers. The UCL allows "a person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL. Cal. Bus. & Prof. Code § 17204. Such a person may bring such an action on behalf of himself or others similarly situated who are affected by the unlawful and/or unfair business practice or act.

79. Defendant's acts, as described above, constitute unlawful, unfair, and fraudulent business practices pursuant to California Business & Professions Code §§ 17200, et seq.

80. Defendant violated the UCL's proscription against engaging in unlawful business practices through its violations of the FAL, Cal. Bus. & Prof. Code § 17500, et seq.; the CLRA, Cal. Civ. Code § 1770, et seq.; the Sherman Food, Drug, and Cosmetic Law, including without limitation Cal. Health & Safety Code §§ 110100, 110390, 110395, 110398, 110400, 110585, 110620, 110660, 110680, 110685, 110705, 110725, 110760, 110765, and 110770; and federal laws regulating the advertising and labeling of food, including 21 U.S.C. §§ 342(b) and 343(a)(1) and (b) and 21 C.F.R. § 101.4(a)(1), and Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.

81. Defendant has also violated the UCL's proscription against engaging in fraudulent business practices by making the Avocado Oil Representation.

82. Despite that Representation, however, every tested lot of the Product was classified as compositionally inconsistent with authentic avocado oil, contradicting the Representation.

83. Defendant has also violated the UCL's proscription against engaging in unfair business practices. Defendant's acts, omissions, misrepresentations, practices and non-disclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of Business & Professions Code § 17200, et seq., in that Defendant's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct. There is no utility to misrepresenting the true composition of the Product or the identity of the oil it contains to the detriment of consumers. Furthermore, Defendant's false and misleading Representation is detrimental to other mayonnaise manufacturers that either do not make similar claims, or if they do,

make them truthfully by using authentic avocado oil. As such, Defendant's misrepresentations and omissions hurt both consumers and the avocado oil market as a whole.

84. Plaintiff and the Classes suffered substantial injury by virtue of buying the Product that they would not have purchased absent Defendant's unlawful, fraudulent, and unfair marketing, advertising, and omissions about the identity and authenticity of the oil in the Product.

85. The gravity of the consequences of Defendant's conduct as described above outweighs any justification, motive, or reason therefor, particularly considering the available legal alternatives which exist in the marketplace. Such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff and the other members of the Classes.

86. Plaintiff and the Classes could not have reasonably avoided their injury or known that the Product's prominent marketing was, in fact, inaccurate. The Product's true oil composition cannot be determined without laboratory testing of its fatty acid and sterol profiles, and consumers do not possess the specialized knowledge or the means to perform such testing at the point of sale. As such, they could not have reasonably avoided the injury they suffered.

87. Pursuant to California Business and Professions Code § 17203, Plaintiff and the California Subclass Members seek restitution, attorneys' fees, and all other relief that the Court deems proper.

**COUNT III**
**Violation of California's False Advertising Law**
**Cal. Bus. & Prof. Code § 17500, et seq.**
**(On Behalf of the California Subclass)**

88. Plaintiff hereby incorporates the foregoing allegations as if fully set forth herein.

89. Plaintiff brings this claim on behalf of himself and the California Subclass against Defendant.

90. Defendant's acts and practices, as described herein, have deceived and/or are likely to continue to deceive members of the California Subclass and the public. As described throughout this Complaint, Defendant represented that the Product is "Avocado Oil Mayonnaise" made with "100% avocado oil."

91. Despite those representations, however, every tested lot of the Product was classified as compositionally inconsistent with authentic avocado oil.

92. By its actions, Defendant has disseminated uniform advertising regarding the Product across California and the United States. The advertising was, by its very nature, unfair, deceptive, untrue, and misleading within the meaning of Cal. Bus. & Prof. Code § 17500, et seq. Such advertisements were intended to, and likely did, deceive the consuming public.

93. The above-described false, misleading, and deceptive advertising Defendant disseminated continues to have a likelihood to deceive in that Defendant affirmatively represented that the Product is made with "100% avocado oil."

94. In making and disseminating these statements, Defendant knew, or should have known, that its advertising was untrue and misleading in violation of California law. Plaintiff and the members of the California Subclass based their purchasing decisions on Defendant's materially false and misleading representations and warranties about the Product's oil. Plaintiff and the California Subclass were injured in fact and lost money and property as a result, in an amount to be proven at trial.

**COUNT IV**
**Violation of State Consumer Protection Statutes**
**(On Behalf of the Multi-State Consumer Protection Subclass)**

95. Plaintiff hereby incorporates the foregoing paragraphs as if fully stated herein.

96. Plaintiff brings this claim individually and on behalf of the Multi-State Consumer Protection Subclass against Defendant.[30]

---

[30] While discovery may alter the following, Plaintiff asserts that the states with similar consumer fraud laws under the facts of this case include but are not limited to: Alaska Stat. § 45.50.471, et seq.; Ariz. Rev. Stat. § 44-1521, et seq.; Ark. Code § 4-88-101, et seq.; Colo. Rev. Stat. Ann. § 6-1-101, et seq.; Conn. Gen. Stat. Ann. § 42-110a, et seq.; Del. Code Ann. tit. 6, § 2513, et seq.; D.C. Code § 28-3901, et seq.; Fla. Stat. Ann. § 501.201, et seq.; Haw. Rev. Stat. § 480-2, et seq.; Idaho Code Ann. § 48-601, et seq.; 815 ILCS 505/1, et seq.; Ind. Code § 24-5-0.5-2, et seq.; Kan. Stat. Ann. § 50-623, et seq.; Ky. Rev. Stat. Ann. § 367.110, et seq.; Me. Rev. Stat. Ann. tit. 5, § 207, et seq.; Md. Code Ann., Com. Law § 13-301, et seq.; Mass. Gen. Laws ch. 93A, § 1, et seq.; Mich. Comp. Laws Ann. § 445.901, et seq.; Minn. Stat. § 325F.68, et seq.; Mo. Rev. Stat. § 407.010, et seq.; Neb. Rev. Stat. § 59-1601, et seq.; Nev. Rev. Stat. § 41.600, et seq.; N.H. Rev. Stat. § 358-A:1, et seq.; N.J. Stat. Ann. § 56:8-1, et seq.; N.M. Stat. Ann. § 57-12-1, et seq.; N.Y. Gen. Bus. Law § 349, et seq.; N.C. Gen. Stat. § 75-1.1, et seq.; N.D. Cent. Code § 51-15-01, et seq.; Ohio Rev. Code Ann. § 1345.01, et seq.; Okla. Stat. tit. 15, § 751, et seq.; Or. Rev. Stat. § 646.605, et seq.; 73 Pa. Stat. Ann. § 201-1, et seq.; R.I. Gen. Laws § 6-13.1-1, et seq.; S.D. Codified Laws §

97. Defendant's acts and practices, as described herein, have deceived and/or are likely to continue to deceive members of the Multi-State Consumer Protection Subclass and the public. As described throughout this Complaint, Defendant represented that the Product is "Avocado Oil Mayonnaise" made with "100% avocado oil."

98. Despite those representations, however, every tested lot of the Product was classified as compositionally inconsistent with authentic avocado oil, and the Product did not conform to the Avocado Oil Representation.

99. The foregoing deceptive acts and practices were directed at consumers and are misleading in a material way because they fundamentally misrepresent the identity, composition, quality, purity, and value of the Product.

100. Plaintiff and the Multi-State Consumer Protection Subclass seek to recover their actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs.

**COUNT V**
**Breach of Express Warranty**
**(On Behalf of the Multi-State Warranty Subclass)**

101. Plaintiff hereby incorporates the foregoing paragraphs as if fully stated herein.

102. Plaintiff brings this claim individually and on behalf of the Multi-State Warranty Subclass against Defendant.[31]

---

37-24-1, et seq.; Tex. Bus. & Com. Code Ann. § 17.41, et seq.; Utah Code Ann. § 13-11-4, et seq.; Vt. Stat. Ann. tit. 9, § 2451, et seq.; Va. Code Ann. § 59.1-196, et seq.; Wash. Rev. Code § 19.86.010, et seq.; W. Va. Code § 46A-1-101, et seq.; Wis. Stat. § 100.18, et seq.; and Wyo. Stat. Ann. § 40-12-101, et seq.

[31] While discovery may alter the following, Plaintiff asserts that the states with similar express warranty laws under the facts of this case include, but are not limited to: Alaska Stat. § 45.02.313; Ariz. Rev. Stat. § 47-2313; Ark. Code § 4-2-313; Cal. Com. Code § 2313; Colo. Rev. Stat. § 4-2-313; Conn. Gen. Stat. § 42a-2-313; Del. Code Ann. tit. 6, § 2-313; D.C. Code § 28:2-313; Fla. Stat. § 672.313; Ga. Code § 11-2-313; Haw. Rev. Stat. § 490:2-313; Idaho Code § 28-2-313; 810 ILCS 5/2-313; Ind. Code § 26-1-2-313; Kan. Stat. Ann. § 84-2-313; Ky. Rev. Stat. Ann. § 355.2-313; Me. Rev. Stat. tit. 11, § 2-313; Mass. Gen. Laws ch. 106, § 2-313; Minn. Stat. § 336.2-313; Miss. Code Ann. § 75-2-313; Mo. Rev. Stat. § 400.2-313; Mont. Code Ann. § 30-2-313; Neb. U.C.C. § 2-313; Nev. Rev. Stat. § 104.2313; N.H. Rev. Stat. Ann. § 382-A:2-313; N.J. Stat. Ann. § 12A:2-313; N.M. Stat. Ann. § 55-2-313; N.Y. U.C.C. Law § 2-313; N.C. Gen. Stat. § 25-2-313; N.D. Cent. Code § 41-02-30; Ohio Rev. Code Ann. § 1302.26; Okla. Stat. tit. 12A, § 2-313; Or. Rev. Stat. § 72.3130; 13 Pa. Cons. Stat. § 2313; R.I. Gen. Laws § 6A-2-313; S.C. Code Ann. § 36-2-313; S.D. Codified Laws § 57A-2-313; Tenn. Code Ann. § 47-2-313; Tex. Bus. & Com. Code § 2.313; Utah Code Ann. § 70A-2-313; Vt. Stat. Ann. tit. 9A, § 2-313; Va. Code Ann. § 8.2-313; Wash. Rev. Code Ann. § 62A.2-313; W. Va. Code § 46-2-313; Wis. Stat. § 402.313; and Wyo. Stat. Ann. § 34.1-2-313.

103. Plaintiff and the Multi-State Warranty Subclass Members formed a contract with Defendant at the time they purchased the Product. In the alternative, no privity of contract is required because Plaintiff and the Multi-State Warranty Subclass Members relied on Defendant's written representations on the Product's label and in Defendant's official online listings, which Defendant intended consumers to review and rely upon.

104. The terms of the contract include the Avocado Oil Representation that the Product is "Avocado Oil Mayonnaise" made with "100% avocado oil."

105. These Representations constitute express warranties and became part of the basis of the bargain between Plaintiff and the Multi-State Warranty Subclass and Defendant.

106. As set forth above, Defendant breached its express warranties because the oil in the Product is not compositionally consistent with authentic avocado oil.

107. Plaintiff provided Defendant with timely pre-suit notice of the breaches alleged herein.

108. Plaintiff and the Multi-State Warranty Subclass performed all conditions precedent to Defendant's liability when they purchased the Product.

109. Plaintiff and the members of the Multi-State Warranty Subclass would not have purchased the Product had they known the true nature of the Product.

110. As a result, Plaintiff and each member of the Multi-State Warranty Subclass suffered financial damage and injury and are entitled to all damages, costs, interest, and fees, including attorneys' fees, as allowed by law.

## COUNT VI
**Unjust Enrichment**
**(On Behalf of the Nationwide Class)**

111. Plaintiff hereby incorporates the foregoing paragraphs as if fully stated herein.

112. Plaintiff brings this claim individually and on behalf of the Nationwide Class against Defendant under California law or, in the alternative, under the laws of the states in which the Nationwide Class members purchased the Product.

113. To the extent required, Plaintiff asserts this cause of action in the alternative to legal claims, as permitted by Rule 8.

114. Plaintiff and the Class Members conferred a benefit on Defendant in the form of the purchase money Defendant received from their purchases of the Product.

115. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and the Class Members' purchases of the Product, which retention is unjust and inequitable because Defendant represented that the Product was made with 100% avocado oil when the oil it contains is not compositionally consistent with authentic avocado oil.

116. Plaintiff and the Class Members have suffered an injury in fact and have lost money as a result of Defendant's unlawful conduct, and are entitled to restitution and disgorgement of all profits Defendant unjustly retained.

## PRAYER FOR RELIEF

117. WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant as follows:

(a) For an order certifying the Classes under Fed. R. Civ. P. 23 and naming Plaintiff as representative of the Classes, and Plaintiff's Counsel as Class Counsel;

(b) For an order declaring that Defendant's conduct violates each of the statutes referenced herein;

(c) For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

(d) For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e) For prejudgment interest on all amounts awarded;

(f) For an order of restitution and all other forms of equitable monetary relief;

(g) For injunctive relief as pleaded or as the Court may deem proper; and

(h) For an order awarding Plaintiff's and the Classes' reasonable attorneys' fees and expenses and costs of suit.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.

Dated: September 14, 2026

Respectfully submitted,

**GUCOVSCHI LAW FIRM, PLLC.**

By: /s/ Adrian Gucovschi
Adrian Gucovschi (State Bar No. 360988)
Nathaniel Haim Sari (State Bar No. 362634)
165 Broadway, Fl. 23
New York, NY 10006
Telephone: (212) 884-4230
Facsimile: (212) 884-4230
E-Mail: adrian@gucovschilaw.com
nathaniel@gucovschilaw.com

*Attorneys for Plaintiff*

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, Adrian Gucovschi, declare as follows:

I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court. I am a partner at Gucovschi Law Firm, PLLC, counsel of record for Plaintiff in this action. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the transaction alleged in the Complaint occurred in this District.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, and that this declaration was executed at Miami, Florida, on September 14, 2026.

*/s/ Adrian Gucovschi*
Adrian Gucovschi